Brought us a third case in the morning call 210-1000 Pekin Insurance Co. v. Pharmasyn, Inc. at all. On behalf of the F1, Mr. Robert Heist. On behalf of the F8, Mr. Robert Tennant. Mr. Heist? Will it please the court? Good morning, Your Honor. Good morning. Good morning, Counsel. My name is Bob Heist, and along with Andrew Foster, we are representing Avalon's Pharmasyn, Inc., John Pierpont, Glenn Norley, and Frank Mosley. And it's not my intention, Your Honor, to simply repeat what is set forth in the briefs, and instead it's just to sort of highlight what we believe are the critical legal issues that give rise to this appeal. And it's our position that the trial court, in granting summary judgment, denying insurance coverage to the Avalon's, made a couple of critical errors. In the first instance, the trial court disregarded the long line of established case law in Illinois that defines what is traditional environmental pollution. In doing so, the trial court failed to consider the totality of the allegations in the pleading and also specifically excluded from consideration an allegation of some dispersion of chemical, quote, into the environment, close quote. So in her analysis, the judge specifically stated the allegations that there was a dispersion into the environment are surpluses. You're not even going to look at them. And in doing that, the court then, the trial judge then, made a determination of what she considered to be, quote, traditional environmental pollution. And with those two errors, then granted summary judgment to Pekin, denying insurance coverage to the Avalon's. Well, it may be obvious, but this is an oral argument that's being recorded. So can you explain to the listener why the statement that it's mere surplusage is error? Because in looking at the underlying complaint, which the trial court has to do in the confines of that complaint in determining whether there's a duty to defend or insurance coverage, an allegation that there was a dispersion into the environment is significant because it leads to the question of what is the environment? The ultimate question of whether there's insurance coverage under a pollution exclusion turns, absolutely turns, on whether there was an inside dispersion of a chemical or an outside dispersion of a chemical. In other words, was a chemical released into the outside external air, water, soil, or surrounding community, or was a release of a chemical limited to a confined space that is confined, not subject to the outside world? So when there's an allegation in a complaint that says into the environment, and the issue turns on, was there an outside environmental exposure or was it limited to an inside environmental exposure? What is meant by into the environment is a question of fact, for is it the environment within the common tenant space within a confined building? Is it, is the environment limited to the totality of the confined building of all tenant spaces within that building? If, if the, are you taking a position that the language is ambiguous, and if it is ambiguous, what's the rule regarding interpretation of an insurance policy? The answer is yes. One of our arguments is that because of the unclear nature of what is the environment as defined by the policy, inside, outside, and by the trial court, the exclusion itself is ambiguous by operation of law. And with that ambiguity, the ambiguity is construed against the drafter of the policy, which in this case is Pekin, and certainly on a summary judgment consideration, that ambiguity gives rise to questions of fact, which leads to the question about is it surplusage? It is surplusage, and it goes to the ambiguity because the questions of what is meant by the environment have not been answered. And the pleading is unclear. The pleading doesn't specify that it was an outside exposure, an outside release. And therefore, with that ambiguity and those unanswered questions of fact that the trial court ignored by getting rid of that language in the pleading or not considering it, the ambiguity and the questions of fact should be construed in favor of the insured, Pekin, Farmerson, and against the policy drafter, Pekin. Summary judgment on that basis should not have been granted, and the case should have been allowed to proceed to get resolution of those questions of fact and to clarify that ambiguity. From an analytical standpoint, just so I can be assured that I'm correct in my understanding of the allegations and the complaint, which is what we're supposed to be looking at, I believe, to determine whether or not the alleged coverage or the duty to defend would arguably cover such allegations, is that the alleged injuries occurred on premises. Yes. Isn't this case about interpretation of an insurance policy and, in particular, interpretation of an exclusionary clause in the policy? Yes and yes. If you read the totality of the pleadings and the complaint, it's very clear. The pleadings and the complaint show an alleged exposure inside the building and only inside the building, and the trial court recognized that in her order that we're appealing from. She required us to include that the parties shared the premises. It was a shared premises, shared space, all internal. And the interpretation of the policy goes to, is this an absolute pollution exclusion that applies to traditional environmental pollution? And it is absolutely ambiguous based on the record below, which our position is that that ambiguity should be construed against the drafter or should be construed against Pekin. And the support for that that the trial court did not recognize is the very clear rule, if you will, that the absolute pollution exclusion issue in this case only, it can only apply to traditional environmental pollution. And then traditional environmental pollution only exists based on the case law. It only exists where there is a dispersion outside of the building into the air, water, or soil. Well, is it dispersion or damage outside? If there's no consequence from a dispersion, I would agree with Your Honor. You're correct. I mean, you could have dispersion outside. Theoretically, when you open the door, a little bit of the isocyanate goes outside. And if nobody's injured and there's no claim, then it never sees the light of day. But if you're correct, Your Honor, if there is a claimed injury resulting from that dispersion, the only way the absolute pollution exclusion applies is if there's an allegation that it was injury sustained resulting from an outside exposure to the chemical. And here, based on those two principles that are well established by the case law in Illinois that we've relied upon, that the absolute pollution exclusion can only apply to traditional environmental pollution. And traditional environmental pollution can only exist if an outside injury or resulting injury from an outside dispersion, that doesn't exist here. And it didn't exist in the record with the trial court. Because the pleadings in the underlying case make no reference that there was any injury sustained by or as a consequence of an outside dispersion. All the allegations are limited to an internal, an alleged internal exposure. And the question is, and answered sufficiently by all the case law, it says in that situation, you don't have traditional environmental pollution. And in the absence of traditional environmental pollution, you cannot have an exclusion supersede the insuring agreement, which was bought and paid for by the appellants. In your brief, you go on to argue that Pekin failed to demonstrate that the terms of the exclusion were satisfied. And you seem to indicate that they had to have some sort of evidence rather than an allegation that there was bodily injury or property damage. I mean, wouldn't the proof actually come at a later stage as opposed to this stage when the duty to defend is being contested? Well, ultimately, the proof of damage, the burden would be on the underlying plaintiff to demonstrate that. But our position is that the duty to defend was triggered by the allegations. If there's any allegation or any theory asserted in the underlying complaint that potentially may require coverage, the duty to defend is triggered. And our position is that the absence or the totality of the pleadings show that the plaintiff was alleging an internal exposure to something that resulted in damage. And it's those allegations that trigger the duty to defend, whether it's true or not, because we contest ultimately that it's true. But whether those allegations are true or not, the mere allegation that he was inside in a building, was exposed to something that he claims caused damage, that triggers a duty to defend. You're saying that I got it reversed. That's right. Okay. So the trial court basically ruled on F1, which reads bodily injury or property damage arising out of the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises, site or location, which is or was at any time owned or occupied by or rented or loaned to any insurer. Yes, Your Honor. That's the pollution, the absolute pollution exclusion that the trial court relied upon as presented by Beacon. And the absence, the absence of any allegation that this was released into the environment outside of the building demonstrates to us that the theory is that there was an inside release and exposure and consequent damages. And that triggers the duty to defend and takes this case outside of the scope of the pollution exclusion. The final point that I would make is that the notion that this exclusion applies to a case where all the allegations are of an inside exposure to something. If the trial court's determination and application of the law, as she saw it, is upheld, two things really happen. One, the insuring agreement that Pharmacin and the Appalachians procured becomes illusory. They're in the business of manufacturing pharmaceutical components within a confined space with appropriate measures in place for handling those chemicals. If there's an internal exposure because of something, as Your Honor pointed out, something minor releases into the air within the building, never even outside, the insurance industry is given the opportunity to disclaim any obligation despite the fact that they knew that Pharmacin was in this business. They agreed to provide insurance, they took premium, but then suddenly if there's even an internal escape of a small amount that somebody claims causes injury from inside the building, the insurance company is off with no responsibility because they can apply the absolute pollution exclusion. And then that makes that insuring agreement for Pharmacin and others illusory. The second thing that happens if the trial court's ruling is upheld is, across the board, these CGL policies that contain these types of absolute pollution exclusions basically allow the exclusion to become the rule and no longer an exclusion. Because in any situation where there's even an internal small amount of release, the exclusion predominates and the insuring agreement becomes basically nullified. And so it's our position that the trial court's determination that there was traditional environmental pollution is contrary to the pleadings, it's contrary to all definitions set forth by the cases led by the Columns Supreme Court decision. And that her misapplication of the legal authority and her ignoring the allegation of into the environment as surf hostage was tantamount to not identifying questions of fact that existed and having those questions of fact defeat the summary judgment. And we would ask that your honors reverse the trial court's granting of summary judgment and enter into order of finding that there was not traditional environmental pollution in this case and determining that the pollution exclusion does not apply. Thank you, your honors. How do you pronounce your name? Chimmers? Morning, your honors. Please support counsel for the plaintiff. Appalachia. Robert Chambers from Pretzel and Stockwood in Chicago. One thing about representing an appalachia as much as you prepare, you never know where to begin until you sit in the courtroom. Each of your honors has questions. I will respond to those questions because I don't think you heard the correct answer from Mr. Heist. Justice Zinoff, you asked the question about whether Pekin has an obligation to prove the allegations of the underlying complaint. Mr. Heist skirted that question. That's point two of his brief of appellant where he says the trial court erred in granting Pekin's motion for summary judgment because Pekin is unable to prove the underlying plaintiffs have suffered bodily injury or property damage and or demonstrate the presence of pollutants. That's at page 22 of his brief. That's 17 to 22. That's their second point. That was the key point of the reply. And it's absolutely contrary to Illinois law. And they're not asking this court to change Illinois law. In fact, you heard him say there's a long line of cases upon which they rely. Not one of them says an insurance company in a declaratory judgment suit has an obligation to prove that the underlying plaintiffs sustained any kind of injury. Our obligation is solely to present the question of law, which we did to the circuit court. Each of your honors said as circuit court judges at one time, you've dealt with these cases. You know the question is, are the allegations of the underlying complaint covered or potentially covered by the policy? Judge Mullen said they were not. That's a question of law. It has nothing to do with proving any of the allegations of the underlying complaint. We merely point to those allegations because that's the duty to defend analysis. Are those allegations within or potentially within the coverage of the policy? So that's not a point to be dealt with other than to reject it. They don't even believe it. The next point, Mr. Heist stood here and said coverage is illusory because the insurance company applies an exclusion. That's not argued. He also says the insurance company should know better. They know this company dealt with chemicals and took a premium and that's to provide a coverage. Well, read the policy. This is a policy with a $189 premium for $1 million in coverage that has a pollution exclusion. It also has an exclusion in it for personal and advertising. It doesn't cover libel, slander, any type of defamation, false arrest, false imprisonment, any of those things. It doesn't cover the products or professional services of a druggist. They're in the business of manufacturing drugs. It also doesn't cover products. There's an exclusion, A-49 of the appendix. It excludes products. Okay, so that's why you get a million dollars in coverage for a $189 premium. Read the policy, which the circuit court did. The circuit court, Justice McLaren, he asked the question, why is it error? Why was it error for the circuit judge to say that the intent of the environment is surplusage? Well, we know, representing employees, as we like to do most of the time, it doesn't matter what the trial court says as far as rationale as long as the result was correct. Now, it was not error. It was not error because, first, the result was correct, and second, the allegations in the second amended complaint to the tort plaintiffs clearly, unmistakably allege, that the release of the toxic and noxious chemicals and fumes that were released at the premises went into the common areas of the environment and into the premises occupied by the plaintiffs, resulting in the plaintiff's injury, A-93. Now, the other thing the trial courts found, not found, noted, they weren't findings, they were notes in the judge's ruling, was that the parties shared premises. So, this is kind of a disingenuous argument by the defendants in this court. They would have this court believe that all these people were like roommates, that they were all in the same place. Well, they weren't. They were in the same building because they ignore the affidavit of their own client, Mr. Norley, who said farm mason was located at this address in suite 140. The tort plaintiffs were in suite 220, 646 of the record. They don't even give the court that affidavit in the appendices, which are the key parts of the record that they want to rely on. Well, Mr. Norley says we're in, for the last 15 years, suite 140. So, you have, it's not the same premise. It's the same building. It's not the same premises any more than if you were in the Chicago Merchandise Mart. If you were on the first floor and somebody was on the fifth floor in what was at the time the world's largest office building before the Willis Power came, you're not any more in the same premises than anybody else is. In fact, there are more people in that building than in many small towns in the state of Illinois. The fact is they shared the building. What was the notation that the trial judge made relative to surpluses? What was she attempting to relate? Well, you don't need that allegation to apply the pollution exclusion to these cases. Well, I was under the impression you said that they were different premises, which means that if they're different premises, that if it's on his premises or on the appellant's premises, then it's on premises. And if it's in another suite that you claim is not the same premises, then it's off premises. And if it's off premises, then we would see in her statement that this is near surpluses would seem to be somewhat inconsistent with the concept that the premises are separate. No, the premises, it's one building, Your Honor. They are separate suites or units within the building established by the defendants themselves through the Norley affidavit that they were in 140. What was your response in the trial court to the claim that this was traditional pollution? This is a company that is in the business of utilizing chemicals that is sued for a release of toxic, noxious fumes from their premises into the common areas of the property and the environment. The trial court, in applying the pollution exclusion here, found or noted that there was traditional pollution. There was traditional environmental pollution, and there was because the injury occurred in a space that was not the space occupied by the alleged polluter, the insurers, unlike the Clean Harbors case that they rely on. Clean Harbors is a federal district court case, not binding on this court. However, with all deference to Judge Darragh, the fact is he found the pollution exclusion did not apply in that case because the plaintiff who was injured came onto the premises of the polluter, if you will, to remove 55-gallon drums and was exposed to the fumes. Now, the fact that he came onto the premises, there's no allegation here that the three tort plaintiffs went to the premises occupied by Farmazin where they dealt with these noxious chemicals. I read a quote from the insurance policy. Where in your pollution exclusion does it say anything about traditional pollution? It doesn't. And did you argue in the trial court that traditional pollution is a red herring? No. Why didn't you? We argued in the trial court that this was traditional environmental pollution as recognized by Justice Monroe who took the lead from the Supreme Court in the Collins case where that concept was placed upon Illinois law. That was the first time in Illinois jurisprudence there was any reference to traditional environmental pollution. And in that case, the court found that where an office building owner has a is sued for failing to maintain his equipment, his property, because he had a furnace or a boiler that emitted noxious fumes, injured people within the building, that was not traditional environmental pollution. It had nothing to do with pollution. It's the failure to properly maintain equipment in a building. It would be very different if you're a chemical, if you're in the chemical business and you use chemicals and in the course of using them you're allegedly negligent which causes fumes, vapors, which are alleged to be noxious and toxic, to leave your premises and injure someone else within the building. Also, the argument made by the defendants, page 17 of their brief, they said, you can't apply the pollution exclusion to us. This isn't a mass environmental tort. This is not a mass environmental tort. Right. They would tell this court, if mass environmental tort is what I think it means, that it can only apply to Times Beach, Three Mile Island, or the Love Canal. Well, that's not true. The Illinois appellate court for the first district, this court's first district, in the Kim case, said it applied to preclude coverage to a dry cleaner who disposed of PERC, the chemical used in the dry cleaning machines, in an improper manner and went into the ground. Well, and it didn't apply in Clean Harbor because the plaintiff who was injured came onto the premises to be exposed. It would be different if instead of coming onto the premises, he drove by every day. And as he drove by, he sucked in the air coming out of that location and was injured. But that's not the case. So clearly it didn't apply in that case. Now, I have searched this court's rules and the general rules of the appellate court, and I could not find a rule that said anything about citing to the court a recent decision which is adverse to my position. Yet I'm baffled that my opponents have not cited to this court this court's third district's decision from September 15th, and I'll cite it if you want me to file a formal motion, I will. The Erie case, 2011, Ill. App. 3rd, 100380. There, and I know I'm reading with my chin, this court's third district held the pollution exclusion was ambiguous when applied to an insured that had a permit to pollute. They said it was ambiguous because the insured had a permit to conduct certain activities on his premises and that because the activities it conducted were within the scope of the permit, it could not be uncovered by application of the pollution exclusion. They said although there was traditional environmental pollution, what the insured did was not considered pollution by the state, therefore, could it be considered pollution by the insurer? Well, this is my only opportunity to address this court, and I will tell this court, and I'm sure your clerks have found that case. It's on the Illinois Appellate Court website, 100380. It's not even a month old. I figured before the ink was dry, they'd have a motion for leave to the site, but in any event, there, this is my one chance to address this court. I'm going to tell this court it's distinguishable. There's no allegation here by these three injured tort plaintiffs that these defendants had a permit to do anything. There's no allegation that what they did was within any permit they may have had. This argument about ambiguity that Justice Bowman raised simply doesn't apply. This is a situation where that case, the Erie case, is a very different case, and it was found ambiguous because they held it was— the trial court in that case could not make a finding that there had been traditional environmental pollution because what was done was permitted. How do you pollute if you have a permit to pollute? Now, the exclusion, I can understand that court's frustration over this issue. Let me explain on the city some time talking for you. I'll try to be quick. I read this, and I couldn't understand why we got involved with traditional environmental pollution, because as I go back and read the policy, the policy doesn't mention traditional environmental pollution at all. I know there's some case law that does. The policy says it covers damage caused by pollution as follows, and then as I read it, it pretty much to me means that if there's pollution from the insurer, it's not covered by the policy, whether it's outside the building or inside the building. I couldn't agree more, and I wish we were on some of the other panels I've had in these cases over the years, and I'll point out they rely, the defendants rely in part on the Connecticut specialty, the loop recycling case. The first district there closed its opinion. This would be at 356 Hill Ave. 3rd at, it looks like 82. Quote, we do not say that the release of a pollutant that is contained within an insurance property cannot constitute traditional environmental pollution. What they held was, the test is, was there traditional environmental pollution, because the Supreme Court says that's the rule, and said we need that test because we don't want what they call a, we know it when we see it standard, which is Oliver Wendell Holmes, 1920s, you know it's a pornographic, you can tell it's pornographic when you see it. Was it your claim that this is in fact traditional environmental pollution because the premises are different, or is it your contention that it doesn't make any difference because the premises are different because the exclusion is much more broad than merely prohibiting or excluding traditional environmental pollution? What exactly, what was your motion? You had to present something to convince the trial court that as a matter of law you're entitled to judgment. Sure. The pollution exclusion, as the three of us, all of us appear to agree, doesn't mention traditional environmental pollution. We argue that the allegations of the Fergus, Walker, and Stewart complaint not only fall within the scope of the exclusion, they almost track the language of the exclusion, which is a very unusual way for a tort plaintiff to plead. It alleges that there were noxious fumes that originated on the property that left the property into the environment, the premises, and the common area. Now, since the tort plaintiff is not the architect of the coverage determination, that is, they call the property suite 220 at 1840 Industrial Drive. This court knows, and the defendants know because they submitted the Norley affidavit, that the defendants were at suite 140. So they're in the same building, premises, but in a different unit, suite, location. So it emanated from the first floor to the second floor in a different part of the building and injured the tenants in that location. That would be traditional environmental pollution, especially whereas here it is alleged as part of their business they dealt with these products, they used these products, and in the course of being negligent with these products, polluted. They injured people through the noxious fumes that emanated from the property. And for all of those reasons, unless the court has other questions, I would ask the court to affirm the judgment entered by the circuit court. Mr. Heist. Yes, Your Honor. Thank you. Just very briefly, Pekin has all along alleged and claimed that this was traditional environmental pollution. In the underlying case, that's what was presented to the trial court. That's what the trial court was confronted with, and it was based on that argument that the trial court, in our view, erroneously agreed that it was traditional environmental pollution. If they had used the word common instead of traditional, would that make any difference? With all due respect, no, Your Honor, because the pollution exclusion that is involved in this case is identical to the pollution exclusion that was at issue in the Collins decision that the Supreme Court confronted. Identical. And the Supreme Court and self-imposed case law have taken it upon themselves to, I think correctly, apply the exclusion with a definition of what is traditional environmental pollution and saying that that exclusion can only apply if there is traditional environmental pollution as defined by the Collins, the Kim, the Clean Harbors, and the case law. And that is that there must be an outside exposure. Injuries resulting were alleged. Injuries resulting from alleged outside exposure, outside of the premises. And that leads to the brief rebuttal of the notion that because they're in two different spaces in the same building, somehow it becomes outside to satisfy the definition of traditional environmental pollution. Nothing could be further from the law in this jurisdiction. The Collins case is absolutely one for the same situation. Different tenants in different office spaces, but all within the same building. The release of carbon monoxide never left the building. Therefore, the Supreme Court recognized it was not outside. It was not traditional environmental pollution. And this exact absolute pollution exclusion was found to not apply by the Supreme Court. So the notion that even though they were in the same building on the same floor, because they were in a different space, that somehow that satisfies the Supreme Court's definition of traditional environmental pollution, that argument, it doesn't, it's not supported by the case law, Your Honors. With respect to the clean water, also. Yes, I agree with this policy. The policy agrees to pay damages caused by pollution from bodily injury, from the escape of pollutants at or from any premise, site, location, which is or was at any time owned or occupied or rented or loaned to any insured. So, from the standpoint of the policy, as I read it, they talk about you need damage, you need pollution, the damage has to be bodily injury, property damage, and it has to be emitted from any premise, site, location, which is or was owned at any time or occupied at any time or rented or loaned to any insured. And then to get to your, the basis of your claim, we have to jump into Supreme Court case law and say that, because the Supreme Court case law discussed traditional environmental pollution, that this policy only covered pollution that was outside, even outside the building. Your argument that, the defense of the argument is that it's one building, two separate units in the building, and because there are two separate units, that's sufficient to cover, to exclude the exclusion. Well, Your Honor. I don't want to make the exclusion. I'm sorry. I understand what you're saying, and that, with all due respect, is not our argument. Our argument is that there was never an emission from the premises. The building is the premises, and there was never an emission from the premises, which is directly consistent with all the case law that says there has to be an, quote, outside, close quote, exposure or emission. So our argument is an internal, inside release of even a small amount is not an emission from the premises, and for that reason. But I emphasize the word at. It says pollution, bodily injury or damages at or from any premises, own, occupied, etc. So the word at means that if you had pollution, injury and damages at the site, the building or the premises, then it's excluded. Just for 10 seconds. I believe, Your Honor, you're really highlighting the ambiguity of the provision, which would mandate that that ambiguity be construed against the policy draft for peaking, and therefore the trial court's order should be reversed. I appreciate that, Your Honors. Thank you. Okay. We'll take another recess. We have other cases on the house.